HAWKINS v. CHAMPION LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. October 7, 1919.)

No. 1702.

MASTER AND SERVANT ⬤⟳286(4)—NEGLIGENCE IN FURNISHING APPLIANCE QUESTION FOR JURY.

Where an employé, while drilling holes in the underside of a side beam of a heavy iron roller table, the end of which was held up by two jacks, was injured by the careening and falling of the table, evidence that one of the jacks lacked the usual collar on its top, on which the beam rested, *held* sufficient to require submission to the jury of the question of the employer's negligence.

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; James E. Boyd, Judge.

Action by Samuel Hawkins against the Champion Lumber Company. Judgment for defendant, and plaintiff brings error. Reversed.

Joseph F. Ford, of Asheville, N. C. (Lee & Ford, of Asheville, N. C., and Austin J. Calhoun, of Memphis, Tenn., on the brief), for plaintiff in error.

A. Hall Johnston, of Asheville, N. C., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. In this action of negligence the court below, on plaintiff's evidence, directed a verdict for defendant, and the case comes here on writ of error.

The accident happened in January, 1916, when defendant was constructing or installing in its plant at Crestmont, N. C., what is described as "a mill roller table." This table consisted of two iron beams some 50 or 60 feet long, between which were a number of steel rollers. One end of the table rested securely on a mud sill, while the other was raised about 3 feet above the floor by two jacks, one under each beam. With the table in this position, the plaintiff was directed to drill some holes on its underside, in which legs were to be inserted. In doing this work, it was necessary for him to sit on the floor beneath the table and drill upwards near the jacks which supported that end of it. About an hour later, while so working, the table careened and fell upon him, inflicting serious, if not permanent, injuries.

The testimony shows that the jack which is alleged to have caused the accident was afterwards picked up near the table, and that it had not the usual collar or cup on it, nor was one found on the floor nearby. This collar or cup, sometimes detachable, is at the extreme top of the jack, and is that part of it which comes in contact with the object to

be raised. There was found, however, a round or oval washer, not corrugated, slightly larger than a collar, which had apparently been used on this jack. A fellow workman testified:

"I did not see any defect, except the collar was off and the washer was on. I think a jack with the washer for a collar would not be as safe as one with the collar, because liable to turn over. * * * I found the collar to this jack lying right by the jack. I found what was used for a collar. The washer was close there, and I just assumed was used, instead of the collar. There was no collar on this jack. * * * So far as I know, there was no warning of any kind that the table was going to fall. The collar on this jack would have this much effect: It would not be safe to lift anything, because it is liable to careen one way or another. If nothing was being lifted, could not say what effect the lack of a collar would have. The jack turned over. The threads did not give way. This had the effect of making the table come over, slanting like; did not come right over. The jack slipped right from under it: the table pushed over; did not fall straight down. The bottom of the jack was about 8 or 10 inches in diameter. It had a good foundation on the floor. It would take some unusual push or shake to turn this jack over; but you take a heavy piece, the least little jar would throw it over."

The plaintiff was in no way connected with the placing of the table or the jacks which supported it, and nothing appeared to indicate to him that the place was unsafe, or to otherwise charge him with contributory negligence. Taking all the circumstances into account, we are of opinion that there was evidence of such substantial character as to permit the inference of a neglect of duty, for which the defendant was responsible. In the absence of any other explanation, we think it should have been left to the jury to say whether the accident was caused by using to support this heavy structure a jack not properly equipped for that purpose. Washington & Georgetown Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Richmond & Danville Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642; Patton v. Southern Ry. Co., 82 Fed. 979, 27 C. C. A. 287; Cincinnati, N. O. & T. P. Ry. Co. v. Jones, 192 Fed. 769, 113 C. C. A. 55, 47 L. R. A. (N. S.) 483.

The judgment will be reversed, and the cause remanded, with instructions to grant a new trial.

Reversed.