Charles Wayne DOGGETT, Appellant,

v.

ATLANTIC HOLDING CORPORATION and Barving Realty Company, Incorporated, Appellees.

No. 7267.

United States Court of Appeals Fourth Circuit.

Argued Oct. 19, 1956.

Decided Nov. 14, 1956.

Edward R. Baird, Norfolk, Va. (Baird, White & Lanning, and Guilford D. Ware, Norfolk, Va., on brief), for appellant.

Thomas M. Johnston, Norfolk, Va. (Seawell, Johnston, McCoy & Winston, Norfolk, Va., on brief), for appellees.

Before PARKER, Chief Judge, and FAHY* and SOBELOFF, Circuit Judges.

FAHY, Circuit Judge.

The District Court by its final order of May 9, 1956, set aside a jury verdict for $25,000 in favor of Charles Wayne Doggett, plaintiff, and entered judgment for appellees, defendants. Thereafter the court entered an order overruling plaintiff's motion to set aside the final order. The court gave as the reason for its orders that defendants' motion for a directed verdict at the conclusion of plaintiff's evidence, or in any event at the conclusion of all the evidence, should have been sustained. Plaintiff appeals both orders.

Plaintiff was a young enlisted man of the United States Navy. Defendant Atlantic Holding Corporation was the owner, and defendant Barving Realty Company the operator, of the Atlantic Hotel in Norfolk. Plaintiff and a fellow sailor were on liberty from the U.S.S. Iowa and registered as guests at the hotel. They were assigned a room on the seventh floor. The adjoining room was occupied by two chief petty officers from the same battleship. The four friends gathered in this latter room for drinks and conversation. Plaintiff became intoxicated. There was testimony that he left his friends in circumstances that would warrant the jury in believing he intended to take the elevator to the lobby and leave the hotel to meet another friend elsewhere. To reach the elevator at the seventh floor level he would be obliged to walk along a corridor from the room of the chief petty officers towards the center part of the hotel and turn right into another corridor or hallway. As he proceeded into the latter area there would be to his left a descending stairway and an open stair well extending 80 feet below to the lobby. The stair well would be nearer to him than the stairway itself. Along the rim of this deep well was a balustrade 32 inches high parallel to

* Sitting in the Fourth Circuit by designation of the Chief Justice.

which plaintiff would walk· to reach the elevator. The well was about 12 feet long and 2½ feet wide.

Some moments after leaving his companions on the seventh floor plaintiff was found lying in the lobby seven floors below, seriously injured. He was in a position consistent with having fallen over the balustrade and down the well, and also consistent with a shorter fall. He testified at the trial that on leaving the room he had passed two doors in the corridor leading to the stairway and elevator, after which his recollection was entirely blank. There was medical evidence that this condition was probably caused by a head injury sustained in the fall, and that the lapse of memory was due to retrograde amnesia, a diagnosis the trial court thought was supported by the evidence.

Plaintiff was 5 feet 11 inches tall. His "center of balance" according to the testimony was more than three inches higher than the balustrade, that is, 35 inches from the floor, whereas the height of the balustrade was 32 inches. His theory of the case was that in turning into the corridor toward the elevator he swung out a bit, brushed against the balustrade and fell over it and down the well to the lobby.

There was considerable evidence bearing upon the safety of the balustrade in relation to the well. The balustrade extended some seventeen feet along the seventh floor center hallway, was of wooden construction supported by vertical wooden spokes or balusters nailed to the floor, and was fastened to a newel post at the stairway entrance and to another post imbedded in the building wall at the far end. There was evidence that it was somewhat wobbly and swayed in the middle. Engineering testimony tended to show that it was below accepted standards of safety, and that the American Standard Safety Code specified a minimum height of 36 inches for such balustrades. It had been constructed some fifty years before, long prior to the formulation of the Safety Code.

The Court submitted the case to the jury, charging on negligence, proximate cause and contributory negligence, fully and well. After deliberating for some two hours the jury were excused until the following day when at their own request the charge was reread to them in full.[1] Thereafter they returned the verdict for plaintiff.

■ If there was sufficient evidence before the jury on the questions whether (1) defendants were negligent in the construction or maintenance of the balustrade, (2) plaintiff fell over it at the seventh floor, and (3) such negligence was a proximate cause of the fall, then, absent contributory negligence, the verdict of the jury was within its competence. We need not consider all of these questions, for in the present posture of the case, as appellees state in their brief, the primary issue is simply whether there was sufficient evidence to support the proposition that the plaintiff fell over the balustrade at the seventh floor. Questions of negligence, proximate cause, and contributory negligence, while issues at the trial, are not presented on the appeal.[2]

On the primary issue stated as above we think the initial decision of the trial judge in sending the case to the jury was correct. Evidence tended to show the following: plaintiff went from his room on the seventh floor toward the elevator; he would walk near the balustrade; since his intention was to descend by the elevator he would probably walk beyond the stairway entrance and proceed more or less parallel to the balustrade; he fell; in the fall he sustained a severe head in-

---

1. The trial court commented that "This was pretty clear evidence that they were giving very careful consideration to the issues presented."

2. The question of defendants' negligence was discussed, however, during oral argument, and we have considered the evidence bearing thereon, together with the Court's charge. We find no error in the fact or manner of submission of this question to the jury.

jury and broken legs,[3] indicating a fall of considerable distance; he was found where one would be found if one fell down the well from the seventh floor; a newel post at a turn in the stairway at the sixth floor projected into the well directly below the balustrade on the seventh floor; and this newel post was damaged and askew, as it would be if struck by a falling object. Moreover, there was no evidence indicating plaintiff had fallen elsewhere, though he might have done so.[4]

When the circumstances stated, which the jury could believe, are considered with the height of plaintiff in relation to the height of the balustrade, and the testimony as to his center of balance, we think the question whether he came into contact with the balustrade and fell over it at the seventh floor was for the jury. Uncertainty as to how the accident occurred understandably troubled the District Judge when he subsequently reviewed and reflected upon the evidence, leading him to set aside the verdict because, as he thought, "it is impossible to determine how the accident occurred." He added, however, that if there were sufficient evidence on the question whether plaintiff fell over the balustrade along the open stair well the verdict should stand. We think the evidence we have outlined was sufficient on this question and that the learned judge's doubts as to the exact factual occurrences did not constitute ground for voiding the jury's resolution of the uncertainty. In other words the evidence, though inconclusive, was sufficient to create a factual issue for the jury, especially when it is remembered that the court, in determining whether or not to submit such a case to the jury, must view the evidence in the light most favorable to the plaintiff. Higashi v. Shifflett, 90 U.S.App.D.C. 302, 195 F.2d 784. The jury rationally could

conclude from all the circumstances that plaintiff fell over the balustrade on his way to the elevator.[5] "The very essence of its [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored." Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520. See Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608; Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910–913; Gibson v. Phillips Petroleum Co., 76 S.Ct. 16.

■ A secondary question arises from a statement in the District Judge's Memorandum accompanying his order setting aside the jury's verdict. He said that in his charge to the jury there was an incorrect assumption that plaintiff fell over the balustrade, adding that in view of the ground for his decision which we have already discussed "this point becomes immaterial * * * but is called to the attention of any appellate court for further consideration." We have indicated that we think the charge to the jury covered fully the essential issues of negligence, proximate cause and contributory negligence. Furthermore, the court explicitly advised the jury that "Nothing which I may have said in the course of this proceeding with respect to the facts and nothing which I say now should be taken by you as an expression of opinion on my part as to those facts. They are determined solely by you * *." Moreover, although at the conclusion of the charge when it was first given defendants objected that the evidence failed to show how plaintiff sustained his injury and that there was no evidence from which the jury could validly conclude that he came in contact with the rail, no objection was made then or when the

---

3. One leg had to be amputated and plaintiff was hospitalized for a year and a half.

4. Although we do not support our decision by this circumstance, there was a general assumption by those who be-

came immediately aware of the accident that plaintiff had fallen from the seventh floor.

5. No question of contributory negligence is raised on the appeal.

charge was reread the following day that the court had assumed that plaintiff fell over the balustrade. The point, therefore, is not one we are required to review. Fed.Rules Civ.Proc. rule 51, 28 U. S.C.A. But we have considered it. We think the jury understood they were to decide how the accident occurred and that the District Court did not inadvertently mislead them into believing the court itself had assumed to decide that issue for them.

Reversed and remanded for entry of judgment upon the verdict of the jury.